Motions for this morning, United States v. Levin, 161386. Good morning, your honors. My name is Elkin Abramowitz, and along with Brian Jacobs and Curtis Leitner, we represent the appellant, Taylor Levin. As your honors know, this is a motion for bail under Section 3141B, which, under the appropriate circumstances, is a mandatory order, and we urge that this is one of those circumstances. It is mandatory that if there's clear and convincing evidence of no flight risk, which we'll come to later, and if the appeal will raise substantial questions of law, which, if Taylor prevails, will likely result in a new trial. We raised three issues which we think fit that standard. I'll only mention two and leave the third one for the brief. The first one deals with Judge Forrest's ruling that prohibited Taylor's defense counsel from cross-examining the seven victim witnesses about the fact that they signed a written contract and a relatively short, two-page contract, and in very bold language, which says that this contract does not cover the roots. So what did you tell the trial judge you wanted to accomplish by cross-examining these witnesses? I know it had to do with impeachment, but how did you explain to the district judge what it was that you would impeach, how you would impeach the witnesses through those contracts? We intended, and I think the record is clear, that we did tell the judge that we understood what she was saying about the Thomas case and that we were not trying to introduce or argue with these contracts that the victims were gullible or that they are at fault. We said fairly clearly that the issue is credibility, that if they're saying on the stand that we were told something verbally and we say it didn't happen and the contract very clearly, right above their signature, in bold language, says this contract does not cover the roots, we think that goes to their credibility, and I believe Judge Forrest was informed of that. And I think that it becomes a very significant issue in the case because – The record may be unclear as to whether we would argue that they were told something about the contracts other than here are the – here's the contract. I thought that was what you were trying to impeach. The contract is signed by the witness at a certain date before the effective date of the conduct. If that is – we wanted to ask them, did they see that? Did they – what did they understand by that? And that clearly, if they did understand it and they did see it, that would clearly contradict their testimony that we were told otherwise because there is a clause in there that says no verbal representations can supersede this. So that – the issue is really one only of credibility. So it gets out of the issue that was raised in the Thomas case, which I think confused Judge Forrest on the point of what we were trying to do with it. The issue was, are these witnesses lying? Did we not inform them that they were not going to get the roots? That was the – that was the clear import of that cross-examination. Secondly, I see my time is getting near. The other point I want to bring up is the reasonable doubt charge. This Court, other courts, the Supreme Court has said, please do not mess around with the reasonable doubt charge. Judge Forrest ignoring that because she said the bits of evidence. She said that they didn't have to find proof beyond a reasonable doubt on every bit of evidence. The case law in – No, the defense counsel, the trial counsel argued to the jury that would you rely on this witness's testimony in important matters of your life? Standard reasonable doubt language. What – what was wrong with it is that it goes beyond and requires a special finding that goes beyond what this Court, the Supreme Court, and this Court after the Supreme Court has said must be said. You can't – bits of evidence actually was discussed in, I believe, the Supreme Court case and said that it is confusing. And when it is confusing, it's reversible error. We think that those two issues mandate bail pending appeal. Whether we win or we don't, Your Honors, know that the standard is if we win those two points, will we get a new trial? And those two points would result – if we win, would result in a new trial. And in any event, you are seeking an expedited appeal? Without question. Without question. We'll comply with an expedited appeal. Second, on flight risk, I – let's see, I have 55 seconds. Flight risk – You actually are over 55. I'll give you – I'll give you 20 seconds. Look, the flight risk issue is a bogus issue because he was out on bail pending appeal pending the trial for a long time. He knew that the sentence was going to be enormous if he lost. The judge said, now you know you've got the sentence and you asked for probation, so now you have a motive to run. That simply is not the right standard. He's not a flight risk based upon the probation department report. They had said he was not a flight risk. So for all those reasons, and because we think that these issues raise substantial issues, we think he's entitled to bail pending appeal, and we will comply with any schedule that this court puts in for an expedited appeal. Could you apply for an accelerated briefing schedule? Yes. Can I offer one? Could you apply yet? Excuse me? Did you make an application already for it? I think my – when is it due? It's due in four weeks. The brief is due in four weeks. Thank you very much. Thank you. Sorry. Is that expedited enough? Are you asking for more expedition than that, or is that – No, I think that's appropriate. I mean, if Your Honors think otherwise. No, no, I'm just asking. No, I think that's enough for us. Thank you. May it please the Court, my name is Jennifer Beidle. I'm an assistant United States attorney in the Southern District of New York. I represented the government in the district court, and I represent the government on appeal. As a sentence defendant, the default rule is that Taylor Levin should be detained. Here, he has failed to show that he is entitled to an exception to that default rule, because first, he has not offered clear and convincing evidence that he is not a flight risk. And second, none of the issues that he raises presents a substantial question of law or fact sufficient to justify a reversal or a new trial. Where is he going to flee? I mean, I don't – I mean, I was just – he has no place to go. Well, as to the flight risk point, Your Honor, Judge Forrest was in the best position to assess his demeanor and credibility at the sentencing. She assessed him at that – at that proceeding and throughout the course of the trial and determined that, in her words, he didn't get it. In other words, he didn't have a concept for the fact that he was going to receive such a large sentence, and he asked for a probationary sentence. He does certainly have assets to his disposal. He has had ties to the New York area in the past. However, those have changed recently. His father is deceased. He no longer has the job at which he was employed. He lived alone, has no children. His stepmother has ties to the Florida area, perhaps may move there in the future. So we would submit that his circumstances have changed enough that he does have incentive to leave the jurisdiction. What assets does he have that he can give to Mr. Obramowicz? Your Honor, I don't know what he's given to Mr. Obramowicz. That's not enough. We certainly know he owns an apartment in the city, and also there were proceeds of this fraud. So turning to the contract issue that was raised, first of all, the word credibility was never used before the district court when arguing as to the purpose for which these contracts would be offered. What was said was, I think the juror could say, should be able to look at the contract and listen to what the customer said about the oral representations and decide whether they would have believed that customer. Whether what? Decide whether? They would have believed that. Why isn't that a credibility? Why doesn't that directly implicate credibility? It does, Your Honor. So you're saying that they didn't use the magic word credibility? So the completion of the sentence is they would have believed that customer if a customer is telling the truth given what they signed. So what actually happened in the district court is that using her power to tailor the way that the evidence came in, Judge Forrest allowed the contracts to be admitted into evidence. She allowed the versions that were submitted to each victim that were in a packet with their name assigned and associated with those victims to be admitted into evidence. She also allowed the victims to testify as they did, to be cross-examined on other issues. And so in the record were those contracts and the victim's testimony, and the comparison that defense counsel offered as the proper purpose for this evidence was then allowed to be made by the jury. They had the contracts. They had the testimony. So the issue is along these lines that the witnesses testified. We were told that we were getting contracts that guaranteed the roots, and the written contract expressly said they don't cover the roots. Is that what was at issue? Almost, Your Honor. So they testified about rural misrepresentations, that they were told that vending machine routes were already available, that they had been preselected, that they would guarantee a certain amount of profit. And then the contract contained some disclaimer language that undercut those representations. So Judge Forrest, assessing the evidence, felt that to avoid the improper purpose of blaming the victim cited in Thomas, if she admitted the contract and allowed the victim testimony, the jurors could make that comparison. What she also admitted was the testimony of Ken Levin's lawyer about the contracts, how they were drafted, what the terms meant. She also permitted, although I believe the defense did not take her up on this permission, cross-examination of cooperators who worked for the Levins, who understood the contracts and the way they were used on the terms of those contracts. So the contracts were in evidence. The comparison that was proper could have been made. Beyond that, the only purpose was improper. So the line of argument, did the victim see it or did they understand the language in the contract, that's very close to blame the victim. Did you, what's your capacity to understand these contractual terms, to compare them to the misrepresentations that you supposedly heard? That is the blame the victim argument that Thomas counsels against, and that's why Judge Forrest correctly structured the evidence in this way. This was on the government's objection? The government was objecting to this line of cross-examination? The government objected to a use of the contracts as essentially a parole evidence rule to say that the contracts controlled, to say that there was an integration clause in the contract? Did it object, though, on the ground that it was improper impeachment? It did not, Your Honor. Also, beyond this, the record evidence beyond the victims is voluminous. There was the testimony of four cooperating witnesses, the recordings of the defendant in his own words. Why didn't it object? Why didn't what? Why did the government not object? In the government's view, in preparing the witnesses, they had not observed, they had not read the language of the contract. It wouldn't have been an area of particular concern to the government, given that. Wouldn't that have been something of interest for the defense to pursue that? Whether it would have been of interest is different than whether it would have changed the outcome of the trial, given the amount of evidence otherwise. You know, there were cooperating witnesses, recordings, a script written by Taylor Levin about the lies that he told, an email in his own words about the lie that he told. Anything else? Not unless the court has any further questions. Is there some way you can tie up the assets you say that it has so they can't use it for footing? I mean, certainly they could, you know, I'm not a real estate lawyer, but certainly you can tie up whatever apartment he owns to do the deed. To the extent they're in his name, Your Honor, we can certainly do that. His father did pass away recently. We don't know whether there were proceeds of life insurance or anything else. To the extent they were put in the name of someone other than Taylor Levin, his father had not been sentenced when he was deceased, so there's no way to attach his assets or any assets that were given to his stepmother. So there are ways that he could have assets that the government cannot attach. And you also have no objections to the expedited briefing schedule? That's correct, Your Honor. Thank you. Thank you.